This rather protracted ERISA benefit case has come for the second time here to the Ninth Circuit. The case originally was dismissed for failure to prosecute, which this court overruled and sent back for a decision on the merits. The trial court conducted a de novo review of the case, allowed the admission of evidence from the plaintiff, and we would submit incorrectly determined that judgment was in favor of Scottsdale Healthcare in this case. The reason that we believe that is incorrect is because it is a bedrock contract principle. Once a plan or a contract, insurance contract, has been determined to be ambiguous, that if there is an interpretation which favors coverage, that that will be the interpretation that should be applied. Now, what happened in this case is that the trial court found that it was ambiguous. The language that we're talking about is the exclusion or exception for payment of anything related to driving under the influence. The court found that was ambiguous but stated that the court found it was only ambiguous in two ways or two possible interpretations, one being that benefits would be denied if there was any alcohol consumption versus driving, I think the court put it, over the legal limit with alcohol. Mr. Vaught testified to the court that his interpretation and his understanding of the policy was quite different, that it would only be denied benefits in the event that he was convicted of driving under the influence charge. He was charged. However, because the state was unable to sustain its burden, it determined that the evidence was insufficient. Under Arizona statutes, the prosecutor dismissed all driving under the influence, all alcohol-related charges. And we submitted and argued to the district court that this effectively meant that the prosecutor felt that they didn't have a case for driving under the influence and that that should have been dispositive as far as the plan was concerned. Now, we have both parties decided the Bishop case, which I think is on point, from the Second Circuit. In the Bishop case, also an ERISA benefit plan, the Second Circuit reviewed a plan that found that certain language regarding intoxication was ambiguous, and the court held that if an exclusionary provision is ambiguous so that an average policyholder of ordinary intelligence can reasonably read the policy as both favoring and disallowing coverage, we construe the clause in a manner most beneficial to the insured, i.e., in favor of coverage and against the insurer. So effectively, the dispositive, and I think the only dispositive issue in this case, which is a legal issue, is whether the district court correctly determined that there were only two interpretations of this ambiguous policy, rather than ---- That's the question, is you would have to insert to have your client's view. It would almost be like you'd have to put a caret in the language and then say, driving under the influence of alcohol, insert, and be convicted thereof. Yes. You'd need that to be inserted. And, in fact, that's exactly what the plan did in the following year. They amended the plan. They changed the language completely with respect to alcohol-related exceptions and added other illegal acts. Is that something for us to look at? Well, it was before the district court. Well, but the reason I'm asking is that this is what insurance companies do. Every time they run into an issue where anybody raised a legal question, then they change their plan. But that's not necessarily dispositive as to whether it was ---- I did cite a case to the district court, and I don't recall the name of it offhand, but said specifically on that point that that can be evidence of what the intent of the plan was previously. Sorry, I don't remember the site, but it's in the record. Okay. We do have a case, a district court case here, the Beckos case out of Oregon, which I think also is on point here, which held that in another illegal act exclusion, which effectively is the same thing we're talking about here, when the plan tries to exclude benefits for a specific act, which it deems to be illegal, in this case driving under the influence, that's the same as calling it another illegal act exclusion. And in the Beckos case, the court said that the other illegal act exclusion is also ambiguous as to whether any official action, such as a citation, complaint, indictment, or conviction, is required to trigger its application. A reasonably intelligent person objectively reading this phrase could conclude that a conviction by a governmental authority is required to trigger the exclusion, at least insofar as the other illegal act portion is concerned. And that's what we have here. But there you had illegal act language, correct? We had a plan that just simply said other illegal acts, but didn't define it. Right. But there it benchmarked the plan provision to some kind of illegal act in general. And here there's nothing like that in the language, is there? Or is there something you can point us to that would tie this back to being, having to be a conviction or illegal? Well, that's a good point, because I think that that is the way that the defense has phrased it, but incorrectly. Okay. We're not saying that this plan requires a conviction. What we're saying is that this plan is ambiguous and that requiring a conviction is one reasonable interpretation of this plan. And if that is deemed to be a reasonable interpretation by the Court, it should be applied to the facts of this case. Because, as I said, the bedrock principle in contract and adopted by ERISA is that if there is an interpretation that favors and an interpretation that disfavors coverage, the one that favors coverage will always be applied. There are we, in our appeal, we weren't directly addressing any of the facts that were determined by the Court except one. And it's only relevant if this Court agrees with the district court that there are only two interpretations. Because the one that the Court applied was an interpretation that if you were driving under the influence or over the limit, if you were driving over the limit at the time, and that was a clear error by the Court, because Mr. Bott presented overwhelming evidence to the Court by way of an affidavit of three people who were with him the night of the accident, that he had only drank one drink an hour over a five-hour period. And then we had an expert testimony in the case that specified that in order for Mr. Bott to have obtained the level of alcohol content in his blood, he would have had to drink 12 standard drinks in the hour before the accident. And, again, the testimony in this case is that Mr. Bott had nothing to drink in that hour. But doesn't, correct me if I'm wrong, but I thought evidence showed that Bott's blood alcohol level of 0.226 was almost three times the Arizona legal limit of 0.08. And there is other evidence, such as the police report, the circumstances of the accident, and the toxology report. Right. And those were the facts relied upon by the district court, which we believe were clear error. First of all, you mentioned the fact that there was a 0.26 reading. That was from a hospital lab report that was the same blood draw that was used by the police department crime lab. And the police department crime lab determined absolutely that this sample was not suitable for analysis. Moreover, the hospital lab report says right on it, this is not to be used, this is only for medical purposes. And we have to assume that the prosecutor accepted that because they dropped all the alcohol charges against Mr. Bott, even though they also had the hospital report that showed 0.261. As far as the court's finding as to the officer, that is simply erroneous. The police report, in fact, which is in evidence, in one of the sections where the boxes are checked, conditions influencing the driver. First, there's a section for no apparent influence, and that's checked for the defendant vehicle, not the defendant in this case. Then there's a section had been drinking. There's nothing checked by the officer here for had been drinking. And, in fact, the charges were not brought by this officer or even recommended by this officer, contrary to what the court found. If you look at the plea agreement, which is in evidence, you'll see that the date of the action against Mr. Bott by Scottsdale City of Scottsdale was in 2004. It was actually more than six months after the accident those charges were brought, which is clear evidence that the police officer had nothing to do with bringing those charges. And, in fact, if you look at the report, the police officer report, which arguably is hearsay for all purposes, but since it's been brought up, the officer had a chance to check the box about drinking and did not. And then, you know, overwhelming evidence on top of that is that we have all these witnesses that you would have to find, and I think the Court, by implication, found that all these witnesses perjured themselves. They were with him that night. They saw how much he drank. The Court called this subjective. The Court called their testimony subjective. But each of them testified as to exactly how much Mr. Bott drank and when he drank it. That's not subjective, I submit. I'll reserve any time. All right. Good morning, Your Honors. May it please the Court. My name is Dan Pasternak, and I represent the appellee on this matter, the Scottsdale Health Corporation Health Plan. Let me first address the legal challenges or the challenges to the district court's legal conclusions. Those legal conclusions are subject to review by this Court de novo. However, I'll also address the factual issues that Mr. Bott raises, which are subject to the Court's review for clear error. Mr. Bott cites to the Bishop decision. And I believe that what Mr. Bott is citing to is the district court's decision in that case. That case was subsequently vacated by a Second Circuit court of appeals decision in 2003. And in that case, the Second Circuit concluded that the exclusion in that case which applied to any loss while legally intoxicated, that court, the Second Circuit, held that that provision was not ambiguous even though it did not state whether a conviction was required. The Bishop court held that the evidence in the record of the insured's blood alcohol concentration was evidence of intoxication and that no adjudication of DUI or conviction for DUI was required because the policy plainly did not require it, only driving while intoxicated. And so I believe the Bishop case, if anything, supports the plan's position. And the plan's position is supported by other cases cited by us in our brief, which I'd like to mention as well. The primary one is the SGI Arges case, which was distinguished by the Court in the Becos decision, which was the decision out of the District of Oregon. The SGI Arges case is the most closely factually aligned case to the case before the Court now. There has been no decision out of the Ninth Circuit that has decided whether a conviction in a language or a requirement for a conviction must be contained within a driving under the influence exclusion in a plan in order to be nonambiguous. In the SGI Arges case, there was an illegal acts provision, which this provision that the plan denied Mr. Vaught's claim was not. It was specific to the driving under the influence provision. However, in the SGI Arges case, there was an illegal acts provision that had a parenthetical that said including DWI. So it specifically incorporated the concept of driving while under the influence. That Court held that the DUI provision, what I'm referring to as the DUI provision, was not ambiguous because it did not state whether a conviction was required. The Court stated, and I'm quoting, it is unreasonable to read the exclusion to require judicial action and conviction. It made this conclusion because driving under the influence is illegal whether you're convicted or not. The Court also noted that the plan drafters, the drafters of that particular plan could have included a requirement for a conviction in the plan if they wanted that to be the requirement for the exclusion to apply, but they did not. And it said of the DUI exclusion, the natural reading of the term does not include such a requirement, a conviction. The BECOS decision that Mr. Vaught relies upon here was, as I said, the decision from the District of Oregon. That involved an exclusion for other illegal acts. It did not, unlike the SGI Arges case, which the Court distinguished there, include or mention driving under the influence. The Court there held the term other illegal acts was ambiguous because it didn't indicate whether a conviction was required. And as to your point, Judge McKeown, there was no benchmark there, and that's what concerned the Court in that particular situation. There was no benchmark of conviction to determine illegality. That's not the issue here. The plan provision at issue here has no requirement of a conviction for driving under the influence. Mr. Vaught's claim was denied under a specific driving under the influence provision and not an illegal acts provision. So BECOS really isn't on point, except to the extent it distinguishes SGI Arges. Counsel for Mr. Vaught mentioned a case which I think the case he was referring to is a case he cited in his brief called Tourdat v. Rockford Health Plan, which was a case that was brought to the Western District of Wisconsin in 2005. That also was an illegal acts case. And I only raise that because that case stands for the proposition contrary to what counsel argued that an illegal acts provision is ambiguous if it doesn't contain a requirement of conviction. That case resolved the question of whether an exclusion was ambiguous without a conviction as follows, and I'm quoting the language. Plaintiff argues the exclusion is ambiguous because it did not say whether an illegal act requires a conviction, but that argument cannot succeed. Illegal acts are illegal acts whether or not they result in convictions. The Court noted that this was particularly, and I think this was particularly appropriate for this particular case, that there can be many reasons why a criminal act does not result in a conviction. The critical question is whether the act is criminal, not whether it was one that resulted in a charge and ultimately a conviction. And that's the same point was noted by the Court in SGI-R just where it said that it was. But let me ask you about the facts of this case. The police officer did not indicate that he'd been drinking. The police report indicated that he would be charged via long form DUI. He did not check the specific box on the form that counsel for Mr. Vaught indicated, but the police report did state that he would be charged for driving under the influence of alcohol. So that was in the police report? Yes, Your Honor, it was. By the officer who stopped him. That's right, Your Honor. Thank you. And moving to the factual challenge. Well, before I move to the factual challenge, I do want to mention one issue related to the subsequent amendment of the plan. Mr. Vaught raises the issue that the plan was subsequently amended in later years to state that conviction was not required under those provisions. The district court properly determined that the plan, the only ambiguity in the driving under the influence provision related to what under the influence means. And it determined that that could mean either being, having ingested any alcohol or being over the statutory limit. That is the only ambiguity in that particular provision. There is no ambiguity as to whether a conviction was required. I've mentioned the cases that hold precisely that. In light of the fact that there's no ambiguity, the same case that Mr. Vaught mentioned earlier, Tourdat v. Rockford Health Plan, also concluded that evidence of subsequent amendments is not relevant if the plan provision is not ambiguous. Subsequent amendments are only relevant if the provision is ambiguous. And because there's no ambiguity in the DUI provision relating to a conviction, there's no relevance to the fact that the plan may have been amended in subsequent years. Turning to the factual issues, Your Honor, the district court concluded that the preponderance of the evidence here supported a conclusion that Mr. Vaught was intoxicated, grossly intoxicated, at the time of the accident. His blood alcohol concentration was more than three times the legal limit at the time of the accident. Is this a case under Mongoloosa where we have the district court taking additional testimony such as Mr. Vaught's declaration? That's correct. So under what standard do we review the district court's fact-finding? The parties are in agreement that the court's review of the district court's factual findings is subject to clear error review. The district court did, following remand, solicit the parties' positions regarding the standard of review to be applied by the court, the district court, as well as whether extrinsic evidence should be permitted to be introduced into the record following briefing. The district court entered an order concluding that de novo review of the plan's  into the record, which he did in the form of affidavits and in the form of evidence relating to the dismissal of the DUI charges that were filed against him. Mr. Vaught character or counsel Mr. Vaught characterizes the evidence that he presented to the court of his non-intoxication as overwhelming. And respectfully, I disagree with that characterization entirely. The district court relied upon the objective evidence of intoxication, primarily the lab report. A lab blood chemistry report was taken based upon a blood sample that was taken from Mr. Vaught when he arrived at the hospital. That lab report, which is in the record, indicates that his blood alcohol concentration was more than three times the legal limit 90 minutes after the accident. At no point has Mr. Vaught challenged the accuracy, the trustworthiness, or the reliability of that specific report. His challenges are far more oblique in the sense that they are relying upon, for medical purposes only. The district court concluded that language had no legal effect because whether a document is admissible for a certain purpose is determined by the rules of evidence and Mr. Vaught never challenged the foundation of the lab report or otherwise attacked the bona fides of it. In fact, to the contrary, the district court noted that his own expert toxicologist report essentially relied upon that lab report in discussing what number of drinks it would take to get to that level of intoxication. But that says nothing about whether, in fact, he did or did not drink to that level. Nowhere in the expert toxicologist report did he say that the lab report was incorrect. As far as the same ---- How many did the toxicologist say? The toxicologist opined that it would take, I believe Mr. Counsel was correct, that the toxicologist reports that it would take 12 drinks to get to that level. And that's what Mr. Vaught said in his declaration, 12 to 15. I believe that's what he said that the expert toxicologist, his report concluded. As far as the ---- Was the blood sample that was tested by the police the same blood sample that was tested by the hospital? It was the same blood draw. However, in the sense that multiple vials of blood were taken at the same time, one or more of those vials were tested at the hospital within 90 minutes, which resulted in the .261 reading. The conclusion by the Scottsdale Police Department that the sample they had in the crime lab was unsuitable for testing, that conclusion wasn't reached until seven days later. And I believe that's because the vial that the blood was placed into didn't contain the appropriate preservatives or anticoagulants that made it inappropriate for testing. As far as the nonconviction, as I mentioned earlier, the SGI Argus, the SGI Argus case, pointed out that the failure of the state criminal justice system to prosecute an individual for an alleged felonious activity by no means constitutes an affirmative finding that the individual is absolved of any crime. Mr. Vaught would have the court accept that the dismissal of the DUI charges in return for a plea bargain where he pled to a lower or a lesser violation, I believe it was reckless driving, the terms of which included alcohol abuse monitoring and participation in an alcohol victim's impact panel, means that he wasn't intoxicated. And, well, it doesn't. There's no evidence in the record at all that explains why the prosecutors elected not to proceed. Perhaps it was because with the tainted or not tainted, but with the unacceptable sample that they had in the crime lab, they felt that they couldn't reach the beyond a reasonable but without standard applicable to the DUI criminal charges. But that doesn't say anything as to whether the district court was appropriately relied upon the lab report. Sorry. What evidence is there that the vial that contained that blood sample was defective? There is a letter in the record from the Scottsdale Police Department that indicated from the crime lab that stated that it was unacceptable for quantitative analysis. That's the evidence in the record, that the sample, and that is seven days later. For what? I believe it said for quantitative analysis. Perhaps it said qualitative analysis. I can't, I'm not certain at the moment. Yeah, it was going to say quantitative. It wouldn't have much to do with it. No, I agree. I believe it said qualitative analysis, that it was not acceptable for, not suitable for that type of analysis. But that conclusion was reached seven days after the accident. Does the blood sample change because it's seven days after? There is no evidence in the record that indicates specifically what the purpose for or what the reason they concluded it was unacceptable for that analysis. But there is also no evidence in the record to support that the hospital sample that was tested immediately after the accident was similarly unacceptable or unsuitable. And Mr. Vaught has never contended that to be the case. Thank you. Getting back to the dismissal of the DUI charges, there's no, as I mentioned before, there is no evidence in the record as to the reasons why the Scottsdale Police Department or the Scottsdale prosecutors elected not to proceed with those charges. I mentioned before that he was convicted and pled guilty to a lesser offense that included elements of alcohol, an alcohol violation. Mr. Vaught states that the Arizona statute that applies to dismissal of DUI charges prohibits dismissal unless there's a lack of evidence. Well, that may or may not be the case, but there's something, there's nothing in there that prohibits the plea bargaining arrangement that was entered to here. Even assuming that the State dismissed those criminal DUI charges against him because of insufficient evidence, that very well may have been because of the different standards of proof here. Your Honors, the district court carefully considered all the evidence and concluded by a preponderance of the evidence that the facts demonstrate that Mr. Vaught was intoxicated at the time of the accident. It applied that finding to the unambiguous or to the DUI provision, which it determined was ambiguous only to the extent it didn't define under the influence. It construed that as either requiring some alcohol or being over the legal limit because under either construction, Mr. Vaught, what it was not entitled to coverage under the DUI plan, it properly rejected that claim, and we would submit it to the  Thank you. Thank you. Briefly responding to counsel's suggestion that I was citing the wrong Bishop case, I was citing from our reply brief, which is the appellate case for Bishop. The SGI case, which counsel relies on, defendant relies on, that case was specifically considered and rejected by the Beckos case. The SGI case, I believe, was Arkansas district court, and Beckos is Oregon in our circuit. The police report that counsel is referring to is not in record. It is not before this court, and it was not even presented to the district court. And I dispute his characterization of the officer's suggestion that Mr. Vaught was going to be charged. I believe that the report simply says that there was an investigation pending that he might be charged. The long form that he's referring to isn't the police department's charging. It's not your ticket to get out the scene. A long form is typically served on you by the prosecutor, which is exactly what happened in this case about six months after the accident. It had nothing to do with the police. Counsel argues that Mr. Vaught did not challenge the hospital report. I think that that, I don't know how anybody could believe that from the record. We specifically challenged the hospital report in terms of the fact that it states on it that it's only for medical purposes. It was challenged under the rules of evidence. In docket number 60, which I believe is our motion for summary judgment or judgment at page five, we stated that generally the rules require expert testimony on scientific or technical issues, rule 702. And that was before the court, and the court did not respond to that. And we did cite an authority. Actually, I think both parties cited the Andres v. Gilberti case at 592 South 2nd, 1250. In this case, which was one of the few cases, maybe the only case I could find where the court addressed this type of a hospital report, the court allowed the hospital report, but only after it had been verified by the custodian, and then it was way, it is interpreted by a lab technician, and it was interpreted by a medical technologist, and finally by the chief toxologist for the county's crime lab. Here we have a bare report that says it's not to be used for anything but medical purposes, and the defendant presented no evidence to verify or authenticate this report or to interpret it. And under rule 703, as I pointed out to the court below, that should have been done, and it was not. My time is up. Thank you both for your patience, waiting until the end of the calendar this morning, and for your argument. The case of Vaught v. Scottsdale Health Care is submitted, and we're adjourned for the morning.
judges: Hug, Nelson D. W., McKeown